**J. M. SPURGEON, Appellant,**

v.

**BLUE DIAMOND COAL CO. et al.,
Appellees.**

Court of Appeals of Kentucky.

July 2, 1971.

Harry R. Stamper, Friend & Mullins, Pikeville, for appellant.

Maxwell P. Barrett, Hazard, Martin Glazer, Thomas R. Emerson, Dept. of Labor, Frankfort, Gemma M. Harding, Dept. of Labor, Louisville, for appellees.

DAVIS, Commissioner.

In this workmen's compensation proceeding a novel question is presented as to whether the employee's injuries arose out of and in the course of his employment, as required by KRS 342.005. The Board and the circuit court ruled that the accident did not arise out of and in the course of appellant's employment and dismissed his claim for compensation. By this appeal he seeks reversal of that adjudication.

The substantial facts are undisputed. Appellant was a section foreman for Blue Diamond Coal Company and had served in that capacity for some time before the injury. His duties included supervising personnel and promotion of mine safety. Blue Diamond was a member of the Hazard Coal Operators Association · which was the sponsoring group for the Kentucky River Mining Institute. It appears that funding for the operation of the Institute was derived from contributions to it by the various mining companies on a tonnage

basis. Monthly meetings of the Institute were held regularly at the VFW premises in Hazard. Various types of programs were presented at these seminars, including safety programs, instructions for the operation of mining machinery, expositions concerning mining laws and regulations, and other matters relating to the mining industry. There were some social aspects incident to these meetings. Although the appellant and two former employees of Blue Diamond testified that they were under the impression that their attendance at these meetings was required, testimony for Blue Diamond was to the effect that such attendance was not required but was urged and encouraged by Blue Diamond's management. Blue Diamond paid for the meals of its employees who attended the Institute's meetings but did not pay any compensation to them for the time they spent at the meetings. In the course of its opinion denying any award, the Board stated:

"The Kentucky River Mining Institute conducts meetings at the VFW Post in Hazard, Kentucky, for the purpose of promoting safety, informing those in attendance as to changes in laws, etc. Defendant employer is a member of the institution. Plaintiff and two other men traveled from Leatherwood to Hazard to attend the meeting on the night in question. Plaintiff drove his own car, was not reimbursed for his expenses and was not required to attend the meeting by his employer; however, he was encouraged to attend the meetings by his employer."

On the night of July 28, 1967, the appellant, in company with two fellow employees, attended a meeting of the Institute at Hazard. While traveling in his own automobile en route from the meeting to his home, he was struck by an automobile while attempting to clear the highway of an obstruction caused by a fallen tree. In its finding the Board noted that the appellant is totally and permanently disabled as the result of injuries received on that occasion.

The Board concluded its opinion with the following paragraph:

"We are of the opinion that the 'going to and from work' rule would prevent a recovery by the plaintiff (Larsons Sec. 15.42). We are also of the opinion that plaintiff must fail in his claim as plaintiff was attending a training program which would not be covered by the Act (Larsons Sec. 27.31(a) and Sec. 27.31 (c))."

In contending that this case does not fall within the usual denial of coverage under the "going and coming rule," the appellant cites and analyzes a number of decisions by this court, including Maddox v. Heaven Hill Distilleries, Inc., Ky., 329 S. W.2d 189 (compensation denied); Hall v. Spurlock, Ky., 310 S.W.2d 259 (compensation allowed); Turner Day & Woolworth Handle Company v. Pennington, 250 Ky. 433, 63 S.W.2d 490 (compensation allowed); Harlan-Wallins Coal Corporation v. Foster, Ky., 277 S.W.2d 14 (compensation allowed); Palmer v. Main, 209 Ky. 226, 272 S.W. 736 (compensation allowed against one employer, denied as to another); Corken v. Corken Steel Products, Inc., Ky., 385 S.W.2d 949 (compensation allowed under positional-risk doctrine); Black v. Tichenor, Ky., 396 S.W.2d 794 (disallowed a tort claim as being within the purview of Workmen's Compensation Act despite "going and coming" rule); Department of Parks v. Howard, Ky., 445 S.W.2d 438 (compensation allowed); Blue Diamond Coal Company v. Creech, Ky., 411 S.W.2d 331 (compensation allowed).

Varying results have been reached upon the differing factual situations presented in the cited cases. In virtually all of the cases mentioned the injury was sustained while the employee was off the regular work premises. The critical issue in most of these cases was whether the employee was injured while performing some service for his employer.

If the appellant was "sent into the street upon a special errand" for the employer, compensation would be payable for an injury he sustained while thus engaged. Palmer v. Main, 209 Ky. 226, 272 S.W. 736. That principle was recognized in Lexington Railway System v. True, 276 Ky. 446, 124 S.W.2d 467, although held to be inapplicable on the theory that the harm suffered by the employee was not within the "street risks" arising from the employment. True was overruled on the latter point by Corken v. Corken Steel Products, Inc., Ky., 385 S.W.2d 949.

▮ Other recent decisions of this court treating the legal principles involved here, as related to the "going and coming" rule, include Baskin v. Community Towel Service, Ky., 466 S.W.2d 456; Craddock v. Imperial Casualty & Indemnity Company, Ky., 451 S.W.2d 658; and Kaycee Coal Company v. Short, Ky., 450 S.W.2d 262. Careful analysis of the various decisions in which the "going and coming" rule has been considered discloses that an employee's injuries sustained as the result of exposure to risks of the streets or highways are covered by the compensation act if the exposure to the hazards was the result of his work or if his employment was the reason for his presence at the place of danger. The "going and coming" rule was succinctly stated in Kaycee Coal Company v. Short: "Injuries received in accidents that occur while the employee is on his way to and from work are not compensable." Id. 450 S.W.2d 264. The usual basis for the rule is that the employee is not performing any service for the employer merely by traveling to and from a fixed work site. It is also said that no reciprocal duties are shown. The VFW Post at Hazard was not a fixed work site for the appellant. It is plain that appellant would have been within the penumbra of the act if his employer had required him to attend the seminar as a part of his employment, because in doing so the employer would have sent him onto the highway upon a special errand, within the rationale of Palmer v. Main, 209 Ky.

226, 272 S.W. 736, and the cases which have followed it. It is thus seen that the real question before the court is not whether the "going and coming" rule bars appellant's claim but whether appellant's attendance at the seminar was in the course of his employment within the purview of KRS 342.005.

As already mentioned, the Board expressed the opinion that appellant's attendance at the training program was not an activity covered by the compensation act and cited Larson, Workmen's Compensation Law, Sections 27.31(a) and 27.31(c). Examination of the text cited from Larson, when considered in light of the facts of the several decisions discussed by Larson, reveals that in certain instances an employee's attendance at training programs and conventions and institutes may be regarded as within the course of employment. For example, Section 27.31(a), after noting that activities of an employee for his own self improvement are primarily his own concern, states: "In some situations, however, it may be found that, either by the contemplation of the contract or by custom, the educational activity is part of the employment." In Section 27.31(c) it is said:

"Employment connection may be supplied by varying degrees of employer encouragement or direction. The clearest case for coverage is that of a teacher who is directed to attend a teachers' institute. (Bower v. Industrial Commission, 61 Ohio App. 469, 22 N.E.2d 840). But it is also sufficient if attendance, although not compulsory, is 'definitely urged' (Dearing v. Union Free School Dist. No. 1, 272 App.Div. 167, 70 N.Y.S. 2d 418) or 'expected.' (Bradley v. Frazier, 17 A.D.2d 235, 233 N.Y.S.2d 894). Connection with the employment may also be bolstered by the showing of a specific employer benefit, as distinguished from a vague and general benefit, as when the attendance of an automobile mechanic at an examination given by the manufacturer permitted the dealer

to advertise 'factory-trained mechanics.' (Blair v. Shaw, 171 Kan. 524, 233 P.2d 731)."

In considering whether the attendance at a particular training program was a compensable activity, the court said in Dearing v. Union Free School Dist. No. 1, 272 App.Div. 167, 70 N.Y.S.2d 418:

"A decisive issue in this claim is whether membership in the teachers' association was compulsory. In determining whether an employee was engaged in her employment when taking part in some activity that was not a part of her direct duties, it is frequently necessary to ascertain whether the employee was under any form of compulsion on the part of the employer. In view of the employee's subordinate position, compulsion may be direct or indirect, and may range in degree from a mere suggestion to a direct order. It may even arise from encouragement only. Perhaps such nuances would not generally be considered as being within the field of compulsion in the ordinary sense of the term, but allowance must be made for them in the relationship between employer and employee, otherwise the employer has directive authority without a corresponding responsibility. And if the slightest degree of compulsion is practiced by employer then it must be presumed that the activity engaged in is incidental to the interests of the employer and therefore a part of the employee's work. In several cases this issue has been so determined."

The court then cited and discussed the cases to which it referred, as may be seen from the opinion in Dearing.

Returning to the facts of the present case, the matter of the "compulsion" was related in the testimony of Earl Forrest, a superintendent of Blue Diamond who was at the seminar meeting on the occasion of the appellant's injury, as appears in the following excerpt from his testimony:

"Q 17 Do you know where Mr. Spurgeon had been prior to that?

A He had been to an institute meeting.

Q 18 What institute meeting is that?

A Kentucky River Mining Institute.

Q 19 And where had that meeting been held?

A Here in Hazard, at the VFW.

Q 20 What is the Kentucky River Mining Institute?

A It's an institute formed by the companies of this vicinity, sponsored by the Hazard Coal Operator's Association.

Q 21 What does the institute do—what is its purpose?

A Its purpose is to promote safety for the coal miners.

Q 22 Was Mr. Spurgeon a member of that institute?

A Yes, sir.

Q 23 Did Blue Diamond Coal Company pay his dues?

A No, each individual pays their own dues.

Q 24 Is it a requirement of employment at Blue Diamond Coal Company that a foreman or supervisory personnel be a member of the mining institute?

A No, it's not a requirement.

Q 25 Do you, as superintendent of Blue Diamond Coal Company, encourage the foremen to go to this meeting?

A Yes, sir.

Q 26 And do you pay for their meals when they do go to the meetings?

A I do.

Q 27 Did you require Mr. Spurgeon to attend this particular meeting—or any other meeting?

A No.

Q 28 It is a requirement that any of the other foremen who are members of this institute attend meetings?

A They are asked to, but they are not forced."

\*      \*      \*      \*      \*      \*

"Q 34 Will you tell the Board whether or not exempt employees, such as Mr. Spurgeon, obtained any benefits from being a member of the mining institute and if so, what?

A Yes, sir, they do. Safety institutions and manufacturers, they come too —and if they have the head of the department or Bureau of Mines, why they go into their end of the laws or codes, federal law—stress their end of the state law. If it's a manufacturer, he presents equipment or shows picture slides or anything pertaining to that particular piece of equipment.

Q 35 In what manner is the exempt employee, such as Mr. Spurgeon, benefited by this?

A Well, he learns any changes that might take place in the law, and sees the different types of equipment—would be educational to him.

Q 36 And does a coal company, such as Blue Diamond, obtain any benefits?

A Yes, we do.

Q 37 In what way?

A Promotes safety—and anything we might be going to buy, the men learn that what can be obtained for the best results.

A 38 I believe Mr. Spurgeon testified that on July 28, 1967, he was required to attend this meeting. Would you tell the Board whether or not that's true?

A He was probably requested, but not required."

■ The Board made no specific finding of fact as to whether there was that degree of "compulsion" upon the appellant to attend the meeting of the Institute as to bring his attendance within the realm of work-connected activity. Neither did the Board make any finding as to the degree of benefit inuring to the employer by reason of the information and training imparted to its employees through the program of the Institute. Since the Board and the circuit court appear to have predicated their rulings on the premise that the "going and coming" rule barred recovery, and in view of the fact that it is a matter of first impression in this jurisdiction as to whether this type activity may be regarded as work connected, the court has concluded that this proceeding should be remanded to the Board for its further consideration in light of the views expressed in this opinion. In the circumstances it will be appropriate for the Board to permit additional evidence concerning the prevailing rules and practices affecting the question of the extent of employer encouragement to its employees in attending the Institute's programs along with the extent of employer benefits, if any, attributable to such attendance.

The judgment is reversed with directions to enter a new judgment remanding the proceedings to the Workmen's Compensation Board for further action in accord with the opinion.

All concur.