### N. H. STONE COMPANY et al., Appellants,

### v.

### Dallas Ray HARRIS et al., Appellees.

Court of Appeals of Kentucky.

Oct. 17, 1975.

Rehearing Denied Feb. 6, 1976.

W. R. Patterson, Jr., Landrum, Patterson & Dickey, Lexington, for appellants.

David LeMaster, Perry & LeMaster, Paintsville, for appellees.

CATINNA, Commissioner.

N. H. Stone Company and Liberty Mutual Insurance Company appeal from a judgment of the Montgomery Circuit Court reversing an order of the Workmen's Compensation Board dismissing the claim of Dallas Ray Harris.

Dallas Ray Harris, Gary Hall, and Paul Hall resided near Topmost in Knott County, Kentucky, some thirty to thirty-five miles south of Prestonsburg. They were the members of a crew employed by N. H. Stone Company on a highway project north of Nashville, Tennessee. This crew usually remained in Tennessee during the week but returned to their individual homes on weekends. They took turns driving from Topmost to the job location near Nashville.

Their customary route was to travel from home to Prestonsburg, then along the Mountain Parkway until it intersected with I–64 near Winchester, along I–64 to Lexington, from Lexington to the Bluegrass Parkway, and then along the parkway and I–65 to the job site.

On the afternoon or in the early evening of February 11, 1973, Allen Bailey, their foreman, telephoned them with instructions to stop at Mt. Sterling on their way to work the following morning and pick up a compa-

ny truck. At about 3 a. m. on February 12 they left Topmost in Gary Hall's automobile with Dallas Ray Harris riding on the back seat. They proceeded along their usual route to work until they arrived at a point where Highway 11 intersects the Mountain Parkway. Here, they left the parkway and traveled along Highway 11 toward Mt. Sterling. Just before they reached Mt. Sterling, some fifteen miles distant, they were involved in an accident in which Dallas Ray Harris suffered serious and lasting injuries by reason of which he is now a permanent paraplegic.

Harris' application for adjustment of claim was dismissed by the Workmen's Compensation Board because the injuries which resulted in his disability were not work related. The board was of the opinion that Harris' injury occurred while he was "just riding to work" and was not, therefore, work related.

This claim was contested upon the theory that at the time Harris was injured he was just riding to work and not covered by the Act. The employer insisted that the fact that the foreman, Allen Bailey, had contacted Gary Hall on the preceding night and asked him to pick up a company truck to be driven to Nashville had no significance in the case because basically Harris "was just riding to work." It was inferred that the instructions to pick up the truck were addressed solely to Gary Hall and that the evidence of the business detour completely excluded Harris as a participant.

However, it is an undisputed fact that if Allen Bailey had not called and asked one of the crew to pick up the truck at Mt. Sterling the three men would not have left the Mountain Parkway on their way to work. The foreman's undenied testimony details the purpose of the trip to Mt. Sterling. He testified:

"Q. I want to ask you if on a Sunday, which would be February 11, 1973 before this accident happened on February 12, 1973, you had occasion to make a phone call from your residence at Mt. Sterling on behalf of your employer, N. H. Stone Company?

A. Yes, sir.

Q. Who did you make that phone call to?

A. I tried about three or four different ones. I finally got hold of Gary, is the only one I could get hold of."

\* \* \* \* \* \*

"Q. Now, for what purpose were you trying to get hold of these people?

A. Well, to give *them* a source of information what the plans were the following week, like we were going on out ahead, me and this other foreman was, and I wanted *them* to come by and pick my pick-up up in Mt. Sterling and bring it down as *they* came, for the sole reason we was planning on, and we did . . we was planning on bringing our equipment in and we had four or five trucks down there and we needed drivers not driving automobiles to drive it back. We wanted *them* to drive the pick-up truck so *they* wouldn't have *their* own cars. *They* could drive the trucks on home."

\* \* \* \* \* \*

"Q. When you called Gary Hall you didn't designate any particular man that was supposed to drive the pick-up truck when *they* got in it, did you?

A. No. I mean *they* was all there and *they* could all drive, and I didn't say no particular one drive. *They* possibly would have, and *they* do do it, even taking turns. From there to Nashville, that's a right smart little drive straight through." (Emphasis ours.)

These undisputed facts conclusively establish that the foreman directed the three men to leave their customary route of travel to work along the Mountain Parkway

and proceed to Mt. Sterling in order to get a truck, loaded with tools and supplies, belonging to their employer. The foreman did not direct any particular member of the crew to drive the truck from Mt. Sterling to Nashville but said that he expected them to take turns driving. Clearly, it was the foreman's intention that all three of them should ride in the truck from Mt. Sterling to Nashville so that they would be available to drive other equipment belonging to the company. At the time Harris and the others left the Mountain Parkway their mission was one being undertaken solely at the request of the foreman and for the purpose of promoting the business of their employer.

As the facts concerning the Mt. Sterling trip are undisputed, the question of whether Harris' injuries were work related is one of law. Cf. *Brewer v. Millich*, Ky., 276 S.W.2d 12 (1955).

It is insisted that this case falls directly within the limitations of the "going-and-coming" rule. In *Voehl v. Indemnity Insurance Company of North America*, 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676 (1933), we find the rule stated generally as follows:

" * * * The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Ordinarily the hazards they encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' * * * While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service and hence within the purview of the Compensation Act."

The rationale of the rule is more succinctly set out in *Spurgeon v. Blue Diamond Coal Company*, Ky., 469 S.W.2d 550 (1971), where we said:

" * * * The usual basis for the rule is that the employee is not performing any service for the employer merely by going to and from a fixed work site."

Although Harris was on his way to work, he had, at the time of his injury, deviated from his regular personal route between home and the job site solely at the request of his foreman and was engaged in an undertaking for the purpose of furthering the business venture of his employer.

The general test is stated by Judge Cardozo in *Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1929), in the following language:

" * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

Actually, the trip by Harris and the other members of the crew to Mt. Sterling was, in effect, a deviation from a usual route of travel but with the reverse effect of a personal trip becoming a business trip by reason of the deviation.

Larson's Workmen's Compensation Law, Volume 1, Section 19, states:

"An identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial. In some jurisdictions, the course of an employment is deemed resumed if, having completed his personal errand but without having regained the main business route, the employee at the time of the accident was proceeding in the direction of his business destination. *If the main trip is personal, a business detour retains its business character throughout the detour.*" (Emphasis ours.)

This latter theory is further enlarged upon in Section 19.36, wherein it is said:

"If the main trip is a personal trip, the business character of a business detour persists throughout the detour. Judge Cardozo's hypothetical example of the employee who, while on a holiday trip, actually goes to see a debtor and is injured while on the business errand, would make this obvious pattern for compensability: * * *." (Plat example omitted.)

Considering Judge Cardozo's test and relating it to the sections of Larson above cited, we must of necessity conclude that the trip of Dallas Ray Harris and the others, after they left the Mountain Parkway, was a work-related journey performed solely for the purpose and benefit of the employer. While it might be true that the work had no part in creating the necessity for travel in general, it is obvious that the journey would not have gone forward from the intersection of the Mountain Parkway and Highway 11 toward Mt. Sterling had the business errand been dropped.

In *Spurgeon v. Blue Diamond Coal Company*, Ky., 469 S.W.2d 550 (1971), a coal company employee was injured while attending a meeting of a mining institute at the suggestion, rather than the request, of his employer. The Workmen's Compensation Board dismissed the employee's claim because it was not work related. Upon appeal the proceeding was remanded to the board for the purpose of determining whether the trip to the mining institute meeting was in any way beneficial to the employer. Here we are not faced with that problem, for there is no doubt concerning the objective of Harris and the others when they detoured from their usual route along the Mountain Parkway and proceeded toward Mt. Sterling.

The Workmen's Compensation Board relied upon this court's opinion in *Lycoming Shoe Company v. Woods*, Ky., 472 S.W.2d 257 (1971). Woods was an employee of Lycoming Shoe Company at West Liberty, Kentucky, but resided in Portsmouth, Ohio. It was his habit to return home on the weekends, riding with a Lewis Reinhardt who used his automobile for the weekend trips. Reinhardt occasionally picked up merchandise or materials in Portsmouth and delivered them to Lycoming at West Liberty. While Reinhardt and Woods were returning from Portsmouth to West Liberty, they were involved in an accident in which both were killed. The claim on behalf of Woods was denied because his fatal injury was not work related. This ruling is distinguishable from the Harris case now before us because in that instance Woods was injured fatally while on his regular, personal route between his home and West Liberty. Applying the Cardozo test, it becomes immediately apparent that the Woods case fails in all aspects to comply with any facet of the requirements which might have converted his trip into a business venture or his fatal injury into one that was compensable. Woods' trip would have been made in any event, and the fact that merchandise and supplies were being transported was inconsequential.

The judgment is affirmed insofar as it holds that Dallas Ray Harris' injury was work related and compensable, and the case is remanded to the Workmen's Compensation Board for a determination of the degree of disability of Harris and for an award in keeping with such determination.

All concur.