**Jerome JACKSON, Appellant,**

v.

**COWDEN MANUFACTURING COMPANY, Liberty Mutual Insurance Company, and Workmen's Compensation Board of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 22, 1978.

Discretionary Review Denied
April 3, 1979.

Alvin B. Trigg, Lexington, for appellant.

W. R. Patterson, Jr., Landrum, Patterson & Dickey, Lexington, for appellee (Cowden Mfg. and Liberty Mut. Ins. Co.).

Before HAYES, PARK and REYNOLDS, JJ.

PARK, Judge.

Jerome Jackson suffered an eye injury while playing basketball on an industrial league team composed of employees of Cowden Manufacturing Company. Jackson appeals from a judgment of the Fayette Circuit Court reversing an award of the Workmen's Compensation Board. In a well-reasoned opinion, the circuit court held that Jackson's injury was not work-related.

## I

Jackson was an employee of Cowden on December 8, 1975, when he was injured playing basketball on a company team in an industrial league game sponsored by the Lexington-Fayette County Parks and Recreation Department. The industrial league games were played at the Winburn Junior High School gymnasium after working hours. The parks and recreation department sponsored two leagues, the industrial league in which Jackson played and a league for independent teams. To participate in the industrial league, a team had to be "sponsored" by a local industry or business. Membership on a team was limited to the employees of the particular company sponsoring that team. The personnel director of each company was required to certify to the department that each team player was, in fact, an employee of the company. There was also an annual league entry fee of $115.00 which had to be paid by or on behalf of each team. A team from Cowden had participated in the league for several years, and Cowden customarily paid the team's annual entry fee.

In addition to paying the team's entry fee, Cowden had provided uniforms for the team in a previous year. Jackson testified that the uniforms provided by the company were too hot, and that each team member purchased his own uniform for the 1975–76 season. However, Cowden did reimburse each team member for the cost of the uniform after withdrawing the team from competition following Jackson's injury. Although earlier uniforms had borne Cowden's name or initials, the evidence is undisputed that Cowden's name did not appear on any of the new uniforms at the time of Jackson's injury in the second game of the season on December 8, 1975. All other equipment was furnished either by the team members or by the league. The team members rented practice facilities at the Yates Elementary School gymnasium at their own expense.

There is no evidence in the record that Cowden ever used any form of direct or indirect compulsion to insure employee participation in the league. The team was organized each year by a group of interested employees who would "sign up" other employees at work to play on the team. Cowden did not employ anyone for the purpose of playing on the team. In fact, there is no evidence that Cowden urged its regular employees to join the team. Employees received no compensation for playing, and Cowden did not provide awards or extend any special privileges to team members. Indeed, Cowden took little active interest in the team.

## II

Jackson cannot recover compensation benefits for his basketball injury unless that injury was work-related within the meaning of KRS 342.620(1). "Work-related" and "arising out of and in the course of employment" are synonymous terms. *Seventh Street Road Tobacco Warehouse v. Stillwell*, Ky., 550 S.W.2d 469, 470 (1976). The difficult problem is to determine when an employee's recreational activities fall within the course of his employment.

In discussing this issue, Larson states the following rule:

> Recreational or social activities are within the course of employment when
>
> (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
>
> (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the service of an employee, brings the activity within the orbit of the employment; or
>
> (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

A. Larson, *Workmen's Compensation Law* § 22.00 (1978). We find this rule to be helpful and in harmony with the general principles of Kentucky workmen's compensation law.

According to Larson, the first inquiry must be whether the injury occurred on the employer's premises and during working hours. The presence of either or both of these factors will frequently be a sufficient basis for finding that the recreational activity was work-related. As stated by Larson:

> When seeking for a link by which to connect an activity with the employment, one has gone a long way as soon as one has placed the activity physically in contact with the employment environment, and even further when one has associated the time of the activity somehow with the employment. This done, the exact nature and purpose of the activity itself does not have to bear the whole load of establishing work connection, and consequently the employment-connection of that nature and purpose does not have to be as conspicuous as it otherwise might. Conversely, if the recreational activity takes place on some distant vacant lot, several hours after the day's work has ceased, some independently convincing association with the employment must be built up to overcome the initial presumption of disassociation with the employment established by the time and place factors.

*Id.* § 22.11, p. 5–72. When the injury-causing activity occurs on the employer's premises during working hours, Kentucky courts have deemed the injury work-related even though the activity was in no way connected with the employee's work-duties and was strictly for personal purposes. In *W. R. Grace & Co. v. Payne*, Ky., 501 S.W.2d 252 (1973), the court affirmed an award of compensation benefits to an employee who was injured at work while using a power saw to make a birdhouse for his own personal purpose. The court emphasized that the injury-causing activity occurred on the employer's premises during work hours, was a common practice in which the employer acquiesced, and filled a slack time period. *See also Ratliff v. Epling*, Ky., 401 S.W.2d 43 (1966), involving the "operating premises exception" to the going and coming rule.

III

When the injury occurs off the operating premises and outside working hours, no single factor should be given conclusive weight in determining whether the injury was work-related. The circumstances of each particular case must be examined to determine what facts exist to connect the injury to the employment. The employer's liability to provide compensation for the injury must be based upon the quantum of aggregate facts rather than the existence or nonexistence of any particular factor.

There are no Kentucky compensation cases involving recreational activities. Nevertheless, there is one important Kentucky decision which helps throw light on the problem. In *Spurgeon v. Blue Diamond Coal Co.*, Ky., 469 S.W.2d 550 (1971), the court considered an injury which occurred off premises after regular working hours. Spurgeon was a mine foreman whose duties included supervising personnel and promoting mine safety. His employer, Blue Diamond Coal Co., was a member of a coal operators association which sponsored a mining institute. The operation of the institute was funded by contributions from the various members of the coal operators association. In addition to social activities, various programs on mine safety were presented at the monthly meetings of the institute. Blue Diamond encouraged but did not require its management employees to attend the institute meetings. Blue Diamond paid for the meals of its employees at the institute meetings, but it did not pay any compensation to them for the time they spent at the meetings. Spurgeon was injured returning from an institute meeting to his home. In the *Spurgeon* case, the court considered the critical issue to be whether the employee was injured while performing some service for his employer. The court held that this issue required the board to make findings of fact respecting (1) the extent to which Spurgeon's attendance at the institute meetings was compulsory or encouraged by Blue Diamond, and (2) the extent to which Blue Diamond derived specific benefit from the attendance of its employees at the institute meetings.

If Blue Diamond had compelled Spurgeon to attend the institute meetings as a part of his employment, the injury would have been compensable because his employer had exposed Spurgeon to the risk of injury while attending the mining institute. In considering whether Spurgeon was required to attend the mining institute, the court recognized his subordinate position. Quoting from the opinion in *Dearing v. Union Free School District No. 1*, 272 App. Div. 167, 70 N.Y.S.2d 418 (1947), the court in *Spurgeon* stated:

> In determining whether an employee was engaged in her employment when taking part in some activity that was not a part of her direct duties, it is frequently necessary to ascertain whether the employee was under any form of compulsion on the part of the employer. In view of the employee's subordinate position, compulsion may be direct or indirect, and may range in degree from a mere suggestion to a direct order. It may even arise from encouragement only. Perhaps such nuances would not generally be considered as being within the field of compulsion in the ordinary sense of the term, but allowance must be made for them in the relationship between employer and employee, otherwise the employer has directive authority without a corresponding responsibility. And if the slightest degree of compulsion is practiced by employer then it must be presumed that the activity engaged in is incidental to the interests of the employer and therefore a part of the employee's work.

469 S.W.2d at 554. Even though a recreational activity is not an integral part of an employee's job, the employer may expand the scope of employment to include the recreational activity by expressly or impliedly requiring the employee to participate. Larson, *supra*, § 22.22.

In addition to the question of compulsion, the court in the *Spurgeon* case held that the board was required to determine the degree of benefit inuring to Blue Diamond by reason of the information and training received by its employees through the meetings of the institute. The court quoted Larson for the proposition that attendance at training programs and institutes may be deemed work-connected by a showing of "specific employer benefit" as distinguished from a "vague and general benefit" 469 S.W.2d at 553; *see also* Larson, *supra*, § 22.30.

In its opinion, the board made no reference to the *Spurgeon* opinion but instead emphasized Larson's discussion of injuries on company teams. In a passage cited with approval by the board, Larson states:

> The law that has developed on company athletic teams continues the pattern observed in other recreation cases: numerous cases both of awards and of denials, frequently from the same states, resulting usually from the different "mix" in the fact situation. Most of the same variables occur: on or off the premises and in or out of working hours; varying shades of employer initiative; differences in amount of employer contribution of money or equipment; differing quantities and types of employer benefit.

Larson, *supra*, § 22.24, pgs. 5–101 and 5–106. Larson's discussion of company teams in section 22.24 is not a departure from his general rule for recreational activities in section 22.00. Likewise, there is no conflict between this passage and the court's approach in the *Spurgeon* case. All of the factors mentioned are relevant, but none is entitled to exclusive consideration. In this light, we will consider the findings of fact by the board.

## IV

The board recognized that Jackson's injury occurred off Cowden's premises and outside working hours. The board made no finding that Cowden expressly or impliedly required Jackson to participate on the basketball team. Indeed, the record is devoid of any evidence of direct or indirect employer compulsion. Jackson testified that a group of employees recruited other employees as team members by passing around a sign-up sheet.

In its opinion and award, the board referred to the fact that Cowden paid the annual league entry fee of $115 and had paid for uniforms in past years. The board also noted that, on occasion, Cowden permitted the team to meet in the company cafeteria. Balanced against this small amount of employer support is the fact that the employee members of the team made equal or greater contributions. The team members rented, at their own expense, the practice gymnasium at the Yates Elementary School. They furnished all of the other athletic equipment used by the team other than the uniform shirt and pants. In fact, the employees had purchased their own new uniforms although that cost was reimbursed by Cowden after Jackson's injury when the Cowden team was withdrawn from league participation. Cowden's meager support for the team might be of some use in building a cumulative case that Jackson's injury was work-related, but standing alone it cannot provide the necessary connection between injury and employment. Larson, *supra*, § 22.24, p. 5–109.

■ With respect to employer benefit, the board considered two factors: (1) advertising and (2) increased employee morale. In its findings, the board noted that the team uniforms in prior years had borne Cowden's name. Although recognizing that Cowden's name had not been placed on the new uniforms at the time of Jackson's injury, the board further found that Cowden's name would have been placed on the uniforms later in the season. The only other mention of Cowden's name in connection with the team was on the game schedule posted at the junior high school where the games were played and occasional publication of league standings in the local newspaper. Considering the limited public interest in industrial basketball league play, we conclude that such publicity conferred no significant benefit to Cowden. Larson, *supra* § 22.24, pg. 5–110. This case does not involve an employer who sponsored a company team or other recreational activity for the purpose of promoting sales or improving its public image.

■ In finding benefit to Cowden, the board emphasized employee morale rather than advertising. The board's opinion states:

> Although cases from other jurisdictions have found that the mere appearance of an employer's name upon the uniforms of the players is not sufficient advertising to bring the recreational activity within the definition of a work-related event, we believe that logically and practically, the Defendant derives benefits in addition to such exposure and advertising. It can hardly be denied by Defendant that such recreational activity is good for the morale of the employees, promotes company pride and loyalty and constitutes an incentive or fringe benefit to many employees.

This type of intangible benefit does not meet the requirement that the benefit to the employer be specific or substantial. Although some courts have found sufficient employer benefit from increased employee morale and good will, a majority of the courts have held that benefit to an employer through increased employee morale and efficiency is not alone enough to bring a recreational activity within the course of employment. Larson, *supra* § 22.30, pg. 5–117. As Larson points out, all recreational activity tends to improve employee efficiency and morale whether work-related or not. Such "vague and general benefit" is not sufficient in itself to bring a recreational activity within the course and scope of employment. *See Spurgeon v. Blue Diamond Coal Company, supra,* 469 S.W.2d at 553.

■ The board advanced an additional factor which it characterized as "perhaps determinative." In finding that Jackson's injury was work-related, the board emphasized that Cowden had complete control over its employees' participation in the industrial basketball league. The Cowden team could not participate in league play without specific authorization from the company. The personnel director was required to inspect the team roster for the purpose of verifying that each player was a

Cowden employee. In addition, Cowden withdrew its authorization for the team to participate in the industrial league after Jackson's injury.

In its opinion, the board stated:

The Defendant's power to terminate its team's participation in the league completely destroys Defendant's contention that the Plaintiff, at the time of the injury was involved in a sort of free-lance activity independent of any company participation, sponsorship, or control.

The circuit court rejected this approach to the question of control. In its opinion, the circuit court stated:

We would interpret the actual control or the right to control as being the employer's right to tell the employees when and where they were to play, when and where they were to practice, who was to play, and also have a part in formulating the rules and regulations under which the activity would be conducted. In this case the employer exercised none of his control and in fact the league was under the direct supervision and control of the Parks and Recreation Department. They made the rules and enforced the rules under which the team played.

We agree with the board that employer control is a factor in determining whether a recreational activity is work-related. If the employer exercises sufficient control, the time and space limits of the employment may be expanded to encompass the basketball court. However, we agree with the circuit court that no such control was present in this case. Cowden never attempted to exercise any control over the details of the operation of the basketball team. At most, Cowden granted a group of its employees the privilege of playing basketball under the name of Cowden. When the question of Cowden's liability arose following Jackson's injury, Cowden simply withdrew that privilege from the team.

■ When all of the evidence is considered, the fact remains that Jackson was injured while engaged in personal recreation at a time and place remote from his employment. He was not performing any

service for Cowden. *See Spurgeon v. Blue Diamond Coal Company, supra,* 469 S.W.2d at 552. Jackson was not on the business of Cowden at the time and place of his injury. *Cf. Oppenheimer v. Smith,* Ky., 512 S.W.2d 510, 512 (1974). Jackson was furthering his own interests rather than those of Cowden by playing in the basketball game in which he was injured. *See Wilson v. Wizor,* Ky., 544 S.W.2d 231 (1976), and *Bell v. Lindsey Wilson College,* Ky., 490 S.W.2d 145 (1972). There is no evidence that Cowden directly or indirectly led Jackson to believe that playing industrial league basketball was required as an incident to his employment. *See Lycoming Shoe Co. v. Woods,* Ky., 472 S.W.2d 257, 258 (1971). Under these circumstances, we agree with a statement of the Court of Appeals of New York in a similar case:

Personal activities of employees, unrelated to the employment, remote from the place of work and its risk, not compelled or controlled by the employer, yielding it neither advantage nor benefit, are not within the compass of the Workmen's Compensation Law. Nor is it of any operative consequence that the employer acquiesced in, or contributed some financial aid to, such activities. The slight support thus given by the employer, without attendant advertising or consequent business advantage, should be accepted for what it really was, a gratuitous contribution to its employees' social and recreational life. . . . In a case such as the one before us, the granting of a compensation award would not only do violence to the letter of the statute but would offend against its spirit, but penalizing employers who, without prospect of profit or benefit, co-operate in enabling their employees to engage in social or athletic recreation on their own time and away from the company premises.

*Wilson v. General Motors Corp.,* 298 N.Y. 468, 84 N.E.2d 781, 784 (1949).

■ The facts in this case are undisputed. Whether Jackson's injury was work-related is essentially a question of law. *N. H. Stone Co. v. Harris,* Ky., 531 S.W.2d 513,

515 (1975); *Bell v. Lindsey Wilson College, supra*, 490 S.W.2d at 146. We conclude that the circuit court was correct in deciding that, as a matter of law, Jackson's basketball injury was not work-related. The facts relied on by the board are not sufficient to connect Jackson's injury to his employment by Cowden.

The judgment of the circuit court is affirmed.

All concur.