## Turner Day & Woolworth Handle Co. et al. v. Pennington.

(Decided Sept. 29, 1933.)

434

· GAVIN H. COCHRAN and ROBERT F. VAUGHAN for appellants.

STOUT & HERDMAN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This is an appeal from a judgment of the Warren circuit court setting aside an award of the Workmen's Compensation Board which had denied the appellee compensation and in lieu thereof awarding appellee compensation for injuries received in an accident which the court held arose out of and in the course of appellee's employment.

The appellee was injured on Saturday, the 6th day of December, 1930. For quite a period of time prior to the day of the accident, the appellee had been in the employ of the appellant Turner Day & Woolworth Handle Company as a slab sawyer. The headquarters of the appellant handle company for the district in which appellee worked was at Bowling Green, and here

it was that appellee had his home and family. The company would send its crews out from Bowling Green to the respective locations where it was engaged in felling and preparing timber, but during such time as it had no timber to fell or it was unseasonable to fell timber it would bring its crews, and especially the key men thereof, as appellee was, to Bowling Green and keep them employed there, since it was difficult to get men of the type of appellee just to work periodically. At the time of the accident here in question, the appellant was having timber cut at Green Ridge, near Gordonsville in Logan county. Appellee had been sent out from Bowling Green by the company to work in the crew which was felling and preparing this timber. His hours of labor were usually completed about 5:30 in the evening. During the week he lived at or nearby the scene of his labors. He was accustomed, however, to return to Bowling Green each Saturday night, going back to the scene of his labors on Sunday night. If requested by his foreman, he would on Sundays go to the place of business of appellant in Bowling Green with such messages as the foreman chose to send; it being the custom of the appellant to have some one of its office force in the office on Sunday morning to meet and talk with such of its men as came in from location. However, it is admitted that on the Saturday night when appellee was hurt he was carrying no message to the company's office at Bowling Green, and was returning solely to be at home over the week-end, and to see his wife, who was then ill. When appellee was first sent to this location at Green Ridge by the appellant, it was agreed that he could return to Bowling Green over the week-end whenever he wished, and that whenever he did so the appellant would pay his railroad fare to and from Bowling Green. Some time after he had been at work at Green Ridge, appellee bought himself a car, and, although the appellant questions it, the evidence is perfectly clear that appellant thereafter gave to appellee the oil and gas necessary to make the trip to and from Bowling Green or paid him in cash for such oil and gas as he had to buy to make the trip. On Saturday afternoon, December 6, 1930, appellee finished working at Green Ridge about 5:30. He took what gas he could find at the mill site and put it in his car, and then drove in to Russellville, which was on his way to Bowling Green. There he had supper. After buying some

more gas in order to have enough to reach Bowling Green, he continued on his way to the latter city. While en route, one of the headlights of his car went out. He stopped the car by the side of the road and went around to the front to adjust the light when an automobile of some third party coming up from the rear ran into the back end of appellee's car, and thereby knocked it against him, injuring him very severely. It is for the injuries thus received that he made application to the Compensation Board for compensation. The board dismissed his claim, and on appeal to the circuit court the case was returned to the Compensation Board to make a separation of its findings of law and fact. This the board did. It found that the appellee was in December, 1930, in the employ of the appellant; that both he and the appellant had accepted, and were operating under, the provisions of the Workmen's Compensation Act of Kentucky (Ky. Stats. sec. 4880 et seq.); that the average weekly wage of the appellee was sufficient to justify the maximum compensation, if any should be awarded; that appellee's family resided in Bowling Green, and that he was boarding in Russellville; that he received traumatic injuries by accident while on his way from the mill at which he worked to visit his wife in Bowling Green; that the accident was caused as heretofore stated; that the trip to Bowling Green was being made by appellee solely for purposes of his own, viz., to visit his wife, who was sick, and said trip was in no way connected with the business of the appellant nor in any way connected with appellee's employment; that the accident occurred on Saturday night several hours after appellee's hours of employment for the day had ended, and at a point many miles removed from appellee's place of employment; that appellee was not being paid for his time by the appellant when the accident occurred; and that the accident was in no wise connected with appellee's duty as an employee of the appellant. The board then concluded that the injuries sustained by appellee in the accident did not arise out of or in the course of appellee's employment. Taking the position that, the facts in the instant case not being in dispute, the issue of whether the injuries arose out of and in the course of the employment was a question of law reviewable by the court, the circuit court held that on the facts stated the accident was one arising out of and in the course of appellee's employment, and sent the case back

to the board to determine the amount of compensation that should be awarded. Acting under compulsion, the board found the amount of compensation to which appellee was entitled, if entitled to anything, but reiterated its position that in its judgment appellee was not entitled to any compensation. On return of the case to the circuit court, it entered a judgment for the amount of compensation which the board found appellee was entitled to if the accident arose out of and in the course of his employment, and it is from this judgment this appeal is prosecuted.

A preliminary question of practice may be at once disposed of. On his petition for review from the Workmen's Compensation Board's award, the appellee made the appellant and "the Workmen's Compensation Board of Kentucky" respondents. Of course, he should have made the individual members of the board respondents and not the board as an entity. But the Compensation Board and its members came in and made no question as to the manner in which it or they had been sued. Therefore the court committed no prejudicial error when it overruled the handle company's special demurrer because of defect in parties respondent. The trial court's position that, where there is no contrariety of evidence, the issue of whether injuries arise out of and in the course of employment is a question of law reviewable by this court, is thoroughly established by the authorities. Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543. As stated, despite appellant's contention to the contrary, there is no dispute in this case as to the controlling facts. Hence whether or not appellee's injuries, which were incurred in the manner stated and under the facts and circumstances related, arose out of and in the course of his employment, is a question of law reviewable by the courts.

The appellant is correct in its position that the general rule is that injuries sustained by employees at least off the premises of the employer when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Podgorski v. Kerwin, 144 Minn. 313, 175 N. W. 694; DeVoe v. N. Y. State R. Co., 218 N. Y. 318, 113 N. E. 256, L. R. A. 1917A, 250; Gilmour v. Dorman, 105 L. T. N. S. 54. The reason is that the hazards which the employee ordinarily encounters in such journeys are not

incident to the employer's business. However, as stated in the case of Voehl v. Indemnity Ins. Co., 288 U. S. 162, 53 S. Ct. 380, 382, 77 L. Ed. 676:

"This general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' * * * While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. And agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

Applying the observations of the Supreme Court in this Voehl Case to the instant one, we find that the appellant was very anxious to retain in its service men of the type of appellee; that, when there was no work for him upon location, it found work for him in its plant at Bowling Green; that, as an inducement to continue in its employ and to go to such locations as it might assign him, appellant was willing and agreed that he might return each week-end to his home at Bowling Green, and that it regarded him in its service on such trips is demonstrated by the fact that it made use of him whenever it saw fit to carry messages to and from the office and the field, and that it paid his expenses in going to and returning from Bowling Green on these week-end trips, first, by paying his railroad fare, and later by standing the expense of the oil and gas needed for his car in making the trip. It is not controlling that he receive no pay for the time spent in making the trip to and from Bowling Green, for his rate of pay per hour, day, or week was undoubtedly based on his being in the field and away from Bowling Green, and took care of the time necessarily used by him in going back and forth. The course of dealing between these parties established that on these week-end trips the

service covered the time used in making the trips. Hence, as said in the Voehl Case, the hazards of the journey may properly be regarded as hazards of the service and within the purview of the Compensation Act. The cases bearing on the proposition as to whether or not an employee who is injured while driving his own car for the purpose of transporting himself from place to place comes within the purview of the Workmen's Compensation Act are collected in an annotation to be found in 85 A. L. R. 978. In most of the cases collected in this annotation, it appeared quite clearly that the employee, though using his own car, was at the time of the accident engaged in the employer's business. In others, such as Ætna L. Ins. Co. v. Burnett (Tex. Com. App.) 283 S. W. 783, relied upon by appellant in its brief, it just as clearly appears that at the time of the accident the employee was not in the service of the employer. Such is also true of the cases cited by appellant of the type of Schultz v. Champion Welding & Mfg. Co., 230 N. Y. 309, 130 N. E. 304. But as said by the annotator in this 85 A. L. R. 978, annotation:

"In deciding whether an injury is within the protection of the Workmen's Compensation Acts, the conclusion is many times affected by facts which, taken alone, do not seem material, but which, when taken in connection with the other factors in the case, become important, and often controlling."

In the Voehl Case, supra, also found in this annotation, the employee using his own car was injured while on his way from his home to his employer's warehouse for the purpose of clearing it of débris. His employer paid him for his time from the moment he left home until his return, and also made him an allowance for his transportation. It was held under these facts that the accident rose out of and in the course of the employment.

In the case of State ex rel. McCarthy Bros. Co. v. District Court, 141 Minn. 61, 169 N. W. 274, 275, the facts were that Von Hagen, who resided with his family at their home in Bismarck, N. D., was in the employ of McCarthy Bros. Company, a Minnesota corporation doing a general grain brokerage business in the city of Minneapolis. It was Von Hagen's duty to travel about, call upon the grain dealers throughout his territory,

and solicit shipments of grain to relators at Minneapolis for sale on commission. The business cards of the company which were presented to its customers gave Von Hagen's address as Bismarck, N. D., and it was there that he received his mail. The territory over which he traveled was crossed by the Missouri river. Towards the end of a week in early April, 1917, Von Hagen found himself on the side of the Missouri river opposite that of his home. There had been a flood in the Missouri river which blocked the bridges and roads so as to make it impossible for Von Hagen to use them in returning to his home on Saturday. On Sunday morning, in order to get home, Von Hagen and others attempted to cross the river in a rowboat, but their boat was capsized, and Von Hagen and his companions were drowned. In holding that the accident to Von Hagen arose out of and in the course of his employment, the Minnesota court said:

"It is urged that decedent was not within the protection of the Minnesota Workmen's Compensation Act at the time of his death, because it appears that he did not come to his death by reason of an accident arising out of and in the course of his employment; that at the time of the accident he had been through with his work since the preceding day; that there was no necessity for his getting home on Sunday; that in order to do so he undertook an extremely hazardous trip for his own purposes, and not in connection with the business of his employers. We are unable to agree with these contentions. Decedent's duties required his traveling from place to place in his territory, which was several hundred miles from his employers' place of business. It was proper that he have some regular or fixed place for communicating with his employers. His home was near his field of labor. He made it his headquarters, as well as his retreat for over Sunday, as he properly would, and as his employers must naturally have expected and intended he should do. Indeed, all of the correspondence between them so indicates. We see no reason why he might not properly, and without stepping outside the scope of his employment, return to his home from his field of labor on the Sabbath day. The case comes within the rules announced in State

ex rel. Chambers et al. v. District Court, 139 Minn. 205, 166 N. W. 185, [3 A. L. R. 1347]. We think the trial court was justified in finding from the evidence that decedent came to his death by reason of an accident arising out of and in the course of his employment.''

As we are of the opinion that the undisputed facts in this case established that on these week-end trips the appellee was in the service of the appellant, it results that the judgment of the lower court in setting aside the award of the Compensation Board and awarding the appellee the compensation he sought is correct and must be affirmed. It is so ordered.

Whole court sitting, Judges Richardson and Thomas dissenting from so much of this opinion as holds that appellee's accident arose out of and in the course of the employment.