Sarah **FORTNEY**, Administrator of the Estate of Clarence Fortney, Deceased; and Sarah Fortney, Guardian of Calvin Fortney, a Minor, Appellants,

v.

**AIRTRAN AIRWAYS, INC.;** Honorable John W. Thacker, Administrative Law Judge; And Workers' Compensation Board, Appellees.

No. 2009–SC–000429–WC.

Supreme Court of Kentucky.

June 17, 2010.

Rehearing Denied Sept. 23, 2010.

326

Scott Mitchell Miller, Priddy, Cutler, Miller & Meade, Louisville, KY, Counsel for Appellants, Sarah Fortney, Administrator of the Estate of Clarence Fortney, Deceased; and Sarah Fortney, Guardian of Calvin Fortney, a Minor.

Elizabeth S. Feamster, Matthew David Ellison, Fowler, Measle & Bell, LLP, Lexington, KY, Counsel for Appellee, Airtran Airways, Inc.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) determined that Clarence Fortney's death in an airplane accident was not work-related because it occurred while he was traveling from his home to the city where he was based and failed to come within the "service to the employer," "employer operating premises/conveyance," or "positional risk" exception to the going and coming rule. The Workers' Compensation Board reversed, however, convinced that the evidence compelled a favorable finding. Sarah King Fortney, Clarence Fortney's widow and also the administratrix of his estate and guardian of his minor child, appeals a decision by the Court of Appeals to reverse and reinstate the ALJ's decision.

We reverse and remand the claim for consideration of the remaining issues. The ALJ misapplied the law by failing to consider all factors material to concluding whether Fortney's death came within the service to the employer exception. The evidence compels a favorable legal conclusion when analyzed correctly. Thus, we refrain from addressing the other exceptions.

Clarence Fortney, a pilot employed by Airtran Airways, Inc. and passenger on Comair Flight 5191, was killed when the plane crashed on takeoff in Lexington, Kentucky on August 27, 2006. Fortney resided in Lexington to be near family. His work was based at Airtran's hub in Atlanta, Georgia, which necessitated a lengthy commute eight to ten times per month. Fortney made a practice of flying between Lexington and Atlanta because it was more convenient and efficient than driving. Fortney would arrive in Atlanta; go directly to the assigned airplane; pilot a number of Airtran flights between Atlanta and other destinations; then return to Lexington. Although Airtran paid Fortney's expenses when his schedule required an overnight stay in a city other than Atlanta, he and other pilots shared the expense of an apartment for overnight stays in Atlanta.

Fortney indicated when applying for employment with Airtran that he would be willing to relocate and that there were no restrictions on where he would locate, but Airtran never dictated where he or other pilots must reside. Airtran employed about 1450 pilots who resided throughout the United States in August 2006 and was required to know and follow the income tax laws of numerous states and localities[1] because 70% of the pilots resided outside the state of Georgia. Airtran incurred additional expense due to participating in a nationwide Transportation Security Administration database that was updated every 24 hours and due to verifying the identity of pilots seeking to fly free or at a reduced fare on Airtran flights.

Regardless of where they resided, all Airtran pilots reported to Atlanta to begin and end their flights. Consistent with industry practice, Airtran provided employees and their families with free or reduced-fare travel on Airtran flights and participated in reciprocal conveyance agreements with other airlines, which also provided free or reduced-fare travel on aircraft operated by those airlines. Nothing required Airtran pilots to fly when commuting to and from work, but those who lived outside Georgia generally used the free or reduced-fare arrangements in order to be able to afford to commute. Airtran required pilots to make two unsuccessful attempts to reach Atlanta in time to pilot an assigned flight before being excused. Pilots performed no work while commuting by air; were not paid until they checked in at the Atlanta hub for an assigned flight; and were not reimbursed for commuting expenses.

Airtran did not operate in Kentucky in August 2006[2] but had a reciprocal arrangement with Comair, which permitted pilots to travel free or at a reduced fare in a cockpit jumpseat on a " 'Space Available' basis." The agreement required those who did so to "observe strict professional conduct, decorum, and wear the carrying airline's appropriate dress for the first

---

1. Klaus Goersch, Vice–President of Flight Operations for Airtran, testified that any Airtran employee can choose where to live. He stated that he was a Florida resident and, as such, paid no state income taxes.

2. Airtran's workers' compensation insurance policy did, however, include Kentucky in its "other states" coverage.

class interline travel or full uniform." Testimony indicated that a pilot flying under the agreement would be seated in the cabin if space was available and could be disciplined for inappropriate conduct.

Fortney was commuting to Atlanta under Airtran's arrangement with Comair when he was killed. Sarah Fortney filed an application for benefits under KRS 342.750 on behalf of herself and their minor child, as Fortney's survivors, and on behalf of Fortney's estate. The contested issues submitted for a decision included "Compensability/going and coming rule" and "Course and scope of employment" as well as other issues.

Airtran argued that Fortney's death was not work-related because he was simply commuting to work; provided no service to the employer in doing so; and benefited personally from being able to commute free or at a reduced fare under the reciprocal arrangement with Comair. Airtran argued that the employer conveyance doctrine was an unnecessary extension of current law as expressed in *Receveur Construction Company/Realm, Inc. v. Rogers.*[3] Moreover, Fortney's travel failed to come within the doctrine because Airtran had no control over the Comair flight on which he was killed.

The ALJ determined that Fortney's death was not compensable under the "service to the employer," "employer operating premises/conveyance," or "positional risk" exception to the going and coming rule. This appeal concerns whether the findings were based on a correct interpretation of the law and reasonable under the evidence.

## I. Background

 Chapter 342 requires a compensable injury to arise out of and in the course of the worker's employment.[4] The "going and coming" rule considers an injury incurred while commuting between a worker's home and workplace to be non-compensable absent exceptional circumstances. The rationale supporting the rule is that perils encountered during travel to and from work are no different from those encountered by the general public and, thus, are neither occupational nor industrial hazards for which the employer is liable.[5] Courts have, however, adopted several exceptions to the rule to accommodate various employment circumstances. The principles supporting the exceptions often overlap.

Kentucky adopted the earliest or one of the earliest exceptions to the going and coming rule in *Palmer v. Main,*[6] a case in which a worker died as a result of an injury sustained off the employer's premises while performing an errand at the employer's direction. The *Palmer* court noted the existing rule under which an accident was not viewed as arising out of the employment if it occurred off the employer's premises, on the street, from causes to which all on the street were exposed. Refusing to withhold the Workers' Compensation Act's protection to an injury that occurred in the course of employment simply because it occurred off the employer's premises, the court determined that an accident arises out of employment if it is "the direct and natural result of a risk reasonably incident to the employment in which the injured person was engaged."[7]

---

**3.** 958 S.W.2d 18 (Ky.1997).

**4.** *See* KRS 342.0011(1).

**5.** *Harlan Collieries Co. v. Shell,* 239 S.W.2d 923 (Ky.1951).

**6.** 209 Ky. 226, 272 S.W. 736 (1925).

**7.** *Id.* at 738.

As modified by *Palmer*, the going and coming rule continued to view an injury due to employee transit as being non-compensable unless the injury occurred in the course of employment. The court determined eventually in *Ratliff v. Epling* that an injury sustained on the employer's "operating premises" arose in the course of employment if it occurred during the reasonable time necessary to accomplish the "going" or "coming" process and did not constitute a substantial deviation from the process.[8] Courts have applied the principles expressed in *Palmer* and *Ratliff* to other situations, thereby creating and refining previously-created exceptions to the going and coming rule.[9]

## II. Service/benefit to the employer exception

■■■ The rule excluding injuries that occur off the employer's premises, during travel between work and home, does not apply if the journey is part of the service for which the worker is employed or otherwise benefits the employer. Factors considered under the exception include not only an employer service or benefit but also whether the injured worker is paid for travel time (*e.g.*, for performing work on the trip, traveling to a remote site, or traveling between job sites)[10] and whether the worker is paid for the expense of travel.[11] Although payment for travel time brings the trip within the course of the employment, the lack of payment does not exclude a trip from the course of employment.[12]

■■■ In most cases involving "a deliberate and substantial payment for the expense of travel" or the provision of a vehicle under the employee's control, the journey during which an injury occurs is viewed as being in the course of employment.[13] The Larson treatise notes that transportation is normally "singled out for special consideration" when it "involves a considerable distance, and therefore qualifies under the rule ... that employment should be deemed to include travel when the travel itself is a substantial part of the service performed."[14] The fact that an employer uses transportation or transportation expense as an inducement to accept or continue employment is material to supporting compensability, particularly when the journey is sizeable and when the employer pays all or substantially all of the expense.[15] We note that such an inducement benefits the worker who accepts it and places a financial burden on the employer but also that the inducement benefits the employer when its purpose is accomplished. An employer is unlikely to provide such an inducement unless it views the resulting benefit as outweighing the burden.

Our predecessor court applied the service to the employer exception to find that a worker who purchased supplies for his

---

8. 401 S.W.2d 43 (Ky.1966).

9. *See, for example, Farris v. Huston Barger Masonry, Inc.*, 780 S.W.2d 611 (Ky.1989); *Spurgeon v. Blue Diamond Coal Co.*, 469 S.W.2d 550 (Ky.1971); *Kaycee Coal Co. v. Short*, 450 S.W.2d 262 (Ky.1970). *See also Standard Gravure Corp. v. Grabhorn*, 702 S.W.2d 49 (Ky.App.1985) (repeal of KRS 342.004 did not require abrogation of the "operating premises" exception).

10. Arthur Larson and Lex K. Larson, LARSONS' WORKERS' COMPENSATION LAW, § 14.06 (2009).

11. *Id.* at § 14.07(1).

12. *Id.* at § 14.06.

13. *Id.* at § 14.07(1).

14. *Id.*

15. *Id.* at §§ 14.07(2) and (3).

employer while home for the weekend and was injured while taking them home for storage sustained a work-related injury.[16] The court also determined that the exception provided coverage where an employee's use of a company vehicle to drive directly between home and the job site benefited the employer by avoiding a stop at the business office.[17] Likewise, the exception provided coverage for a nursing assistant who provided home health care services and was injured on her way home from an assignment.[18] The court reasoned that "travel" to and from clients' homes was part of the service that her employer offered.

Of particular relevance to the present facts, the exception provided coverage where an employer agreed to pay transportation costs for a worker's weekend trips home from the worksite as an inducement for him to remain employed.[19] Although the worker sometimes carried messages to the employer's home office on the trips, he carried none on the trip on which he was injured.

The evidence in the present case indicated that Airtran did not pay Fortney for time spent in transit between Lexington and Atlanta, which was not conclusive under the exception. The ALJ failed, however, to consider whether the free or reduced-fare arrangement induced Fortney to accept or continue employment with Airtran. A favorable finding would have brought the trip from Lexington to Atlanta on August 27, 2006 within the course of his employment.

At no time did Airtran place restrictions on where employees lived. Thus, Fort-

ney's statement at hiring concerning his willingness to relocate would not alone support a reasonable finding that the arrangement was neither an inducement to accept the employment nor to continue it.

The ALJ denied coverage under the service to the employer exception based on a finding that Airtran's free or reduced-fare arrangement with Comair benefited Fortney by allowing him to live where he chose but burdened Airtran. Airtran's arrangement existed before Fortney was hired. Together with Sarah Fortney's testimony that her husband chose to live in Lexington to be near family and evidence that the arrangement made it possible to do so financially while working for Airtran, the ALJ's finding that the arrangement enabled Fortney to live where he chose compelled legal conclusions that it was an inducement to Fortney to accept the employment and that it benefited Airtran by accomplishing its purpose. The arrangement brought within the course of Fortney's employment travel by air between Lexington and Atlanta when going to or coming home from work. His death was work-related because he was making such a trip when it occurred.

We find it unnecessary under the circumstances to consider other going and coming rule exceptions. The claim must be remanded to the ALJ to consider the remaining issues.

The decision of the Court of Appeals is hereby reversed and this claim is remanded to the ALJ for consideration of the remaining issues.

---

16. *Hall v. Spurlock,* 310 S.W.2d 259 (Ky. 1957).

17. *Receveur Construction Company/Realm, Inc. v. Rogers,* 958 S.W.2d 18 (Ky.1997).

18. *Olsten–Kimberly Quality Care v. Parr,* 965 S.W.2d 155 (Ky.1998).

19. *Turner Day & Woolworth Handle Co. v. Pennington,* 250 Ky. 433, 63 S.W.2d 490 (1933).

All sitting. MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, and SCOTT, JJ., concur.

VENTERS, J., dissents by separate opinion in which SCHRODER, J., joins.

VENTERS, J., Dissenting.

I respectfully dissent, and would apply the "going and coming" rule because I do not believe the travel arrangement afforded to airline employees is of any substantial benefit or service to the employer. Schroder, J., joins.