# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 27, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2018-SC-000119-WC

DATE 10/18/18 Kim Redmon, DC

BRIAN STROZZO                                                                          APPELLANT


                            ON APPEAL FROM COURT OF APPEALS
V.                          CASE NO. 2017-CA-001191-WC
                            WORKERS' COMPENSATION BOARD
                            NO. 16-WC-00540


CESA CONTRACTORS;                                                    APPELLEES
HON. JONATHAN R. WEATHERBY,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

### Factual and Procedural Background

Appellant, Brian Strozzo, worked as a laborer/carpenter's helper for Appellee, CESA Contractors, Inc. ("CESA"), a general contracting construction company in Calvert City whose workers perform an assortment of construction services and maintenance repair work. Strozzo's duties at CESA consisted of pouring and finishing concrete utilizing a variety of tools. He worked for CESA from September 28, 2015 until December 18, 2015, when he was laid off due to lack of work.

Strozzo's medical concerns first arose in the summer of 2013 while he was working for American Contractors ("American") as a laborer, primarily operating a jackhammer. During the three months he worked for American, he began to notice a tingling numbness in three of his fingers. Strozzo gave deposition testimony that, after he was laid off by American, "[his fingers] woke up . . . They came back to normal . . . [and] [w]orked fine." (Strozzo Dep. at 29). On August 5, 2014, Strozzo informed his primary physician, Dr. Melissa Purvis, of a painful sore on the tip of his right index finger, which he believed was the result of concrete poisoning. His right index finger healed with antibiotic treatment.

From April 14 to August 4, 2015, Strozzo poured concrete as a laborer for Morsey Construction ("Morsey"). He primarily used a hand trowel and bull float, but also used a vibratory tool at times. While working for Morsey, Strozzo sought treatment on two occasions from Dr. Purvis for painful swelling in his fingers: once on July 27 and again in early August. Dr. Purvis' office notes from July 27 listed Strozzo's ailment as "concrete poisoning," along with diagnosing him with low back pain and abrasions. He was treated with a steroid pack and Bactrim.

On September 28, Strozzo began working for CESA, using vibratory tools—such as a 90-pound pneumatic jackhammer and a hammer drill—about fifty percent of the workday, according to his deposition testimony. (Strozzo Dep. at 43). During his time working for CESA, Strozzo continued to suffer pain in his fingers.

On December 8, 2015, Strozzo again visited Dr. Purvis; he was still suffering painful swelling in his fingers, along with cracked skin on his fingertips that would not heal. His fingertips were red, white and blue, with yellow, discolored nails that were very tender to the touch. Dr. Purvis diagnosed him with finger lesions and referred him to Dr. Scott Sanders, a vascular surgeon, for a circulatory evaluation.

In January of 2016, Dr. Sanders took arteriograms of Strozzo's hands, which revealed occlusions in the ulnar arteries of both of his wrists. Accordingly, Dr. Sanders diagnosed him with "classic hypothenar hammer syndrome" ("HHS") and referred Strozzo to Dr. Scott Farner at Kleinert Kutz Hand Surgery Clinic. Dr. Farner agreed with Dr. Sanders' diagnosis and recommended left ulnar artery reconstruction at the wrist. The surgical procedure was performed on April 6, 2016. Thereafter, on July 14, 2016, ulnar artery reconstruction surgery was performed on Strozzo's right wrist and palm.

Following his surgeries, Dr. Farner restricted Strozzo from using vibratory tools, hammering, or working in cold temperatures, but returned him to regular duty labor with a nitro paste prescription. On October 4, 2016, Strozzo returned to Dr. Farner with pain and a non-healing wound. He was directed to continue using the nitro paste and was released for alternative duty with no vibratory tool use.

In March of 2016, Strozzo filed a Form 101 for permanent occupational disability benefits, alleging he suffered a cumulative trauma work-related injury to his hands in the course of his employment with CESA as a result of

3

using a jackhammer and other vibratory tools. On August 15, 2016, CESA sent Strozzo to Dr. Thomas Gabriel for an independent medical exam. Dr. Gabriel concurred with the HHS diagnosis. Thereafter, Strozzo's medical records from all of the aforementioned physicians were introduced by the parties.

Dr. Sanders stated in deposition testimony taken as proof in the case: "Mr. Strozzo has hypothenar hammer syndrome and it's likely work related," which could have resulted from a single traumatic incident, "but mostly it's kind of a slow, gradual, repetitive thing." (Dr. Sanders Dep. at 5, 9). In pertinent part, Dr. Gabriel noted in his evaluation that, because Strozzo's medical history of hand problems dated back to 2013 prior to his employment with CESA, "I would therefore not find causation with regard to Mr. Strozzo's hand symptoms and his employment with CESA Contractors, but rather note that[,] coincidentally, the symptoms reached a level of disability coincident with his employment at CESA Contractors." (Dr. Gabriel Report at 4).

Following the formal hearing held on October 18, 2016, the Administrative Law Judge ("ALJ") found in CESA's favor and dismissed Strozzo's claim, finding that his symptoms predated his work for CESA and, therefore, he had not proven his injury was causally-related to his work for CESA. Strozzo filed a motion for reconsideration. On February 13, 2017, the ALJ's Order on Reconsideration reaffirming dismissal of Strozzo's case cited *Hale v. CDR Operations, Inc.*, 474 S.W.3d 129 (Ky. 2015), for the proposition that "the employer responsible for a cumulative trauma or repetitive motion

4

injury is that employment where the worker's injury became manifest." (ALJ's Order on Pet. for Reconsideration at 1). The ALJ held that Strozzo's injury had become manifest prior to his employment by CESA. Strozzo appealed the ALJ's decision.

The Workers' Compensation Board ("the Board") upheld the ALJ's order, concluding that, although Strozzo presented proof that could support a finding that his work for CESA may have aggravated his pre-existing condition, the ALJ's conclusion that Strozzo had failed to demonstrate a work-related injury claim against CESA was sufficiently supported by the evidence. Strozzo appealed to the Kentucky Court of Appeals pursuant to Section 111 of the Kentucky Constitution and KRS 342.290, which affirmed the Board's decision.

## **Analysis**

Appellate review of Board rulings strictly concerns whether the Board's final order was: (1) based on a correct interpretation of the law, and (2) reasonable under the evidence. *Fortney v. Airtran Airways, Inc.*, 319 S.W.3d 325, 328 (Ky. 2010). Appellate courts will only disturb a Board decision that is reasonable under the evidence "to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 688 (Ky. 1992).

"The ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP*

*CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citing *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985)).

"When the decision of the fact-finder favors the person with the burden of proof, his only burden on appeal is to show that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did." *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). In order to reverse the ALJ's finding, "the claimant, who has the burden of proof, must present evidence that is so overwhelming as to compel a finding in his favor." *Howard D. Sturgill & Sons v. Fairchild*, 647 S.W.2d 796, 798 (Ky. 1983) (citing *Old Republic Ins. Co. v. McCarty*, 599 S.W.2d 163 (Ky. 1980)).

A compensable "injury" under the Workers' Compensation Act "means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment . . . ." KRS 342.0011(1). As stated previously, Strozzo's hand problems manifested in the summer of 2013 and persisted throughout his work history until culminating in the need for left and right ulnar artery reconstruction surgeries in the summer of 2016. Notably, the medical experts provided that HHS is commonly caused by repetitive use of vibratory tools and sudden-impact tools. Strozzo was a laborer who used his hands for rough manual labor during his entire career and was a jackhammer operator in 2013 when his symptoms first arose.

Therefore, sufficient evidence exists that Strozzo's employment with CESA was not "where [his] injury became manifest." It is difficult to determine

6

from the record under whose employment Strozzo's injuries first became manifest. But it was not CESA.

Although "[i]t is well-established that the work-related arousal of a pre-existing *dormant* condition into disabling reality is compensable," *Finley v. DBM Techs.*, 217 S.W.3d 261, 265 (Ky. App. 2007) (citing *McNutt Constr./First Gen. Servs. v. Scott*, 40 S.W.3d 854 (Ky. 2001)) (emphasis added), Strozzo's medical condition was apparent prior to his work for CESA. Even in such cases, ALJs have only found the employer responsible for medical treatment relating to the previously-dormant condition, not permanent partial or temporary total disability benefits. *See, e.g., Landmark Media Publ'g, LLC v. Mark Branham*, No. 2017–SC–000209–WC, 2018 WL 896898, at *2 (Ky. Feb. 15, 2018).

Here, substantial evidence supports the ALJ's finding that Strozzo's injuries were not a work-related occurrence "arising out of and in the course of [his] employment" with CESA. KRS 342.0011(1). Therefore, the reviewing court was bound by the record. *Paramount Foods, Inc.*, 695 S.W.2d at 419. Accordingly, the Court of Appeals properly deferred to the ALJ's findings, authorized by the Board's final order, which were based upon evidence of substance. Finding no legal error, the Court of Appeals appropriately affirmed the Board's final order.

## **Conclusion**

For the reasons stated herein, we hereby affirm the decision of the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Craig Housman
HOUSMAN & ASSOCIATES


COUNSEL FOR APPELLEE, CESA CONTRACTORS:

Samuel J. Bach
BACH & ARMSTRONG, LLP